

**FILED**
in the Middle District of
North Carolina

**10/20/2025**
**8:37 am**

Clerk, US District Court
By: _____ kg _____

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of North Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.    1:25MJ413-1 |
| Erick James MOORE | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    August 14, 2025 - October 1, 2025    in the county of    Orange, Moore, Richmond    in the

Middle    District of    North Carolina    , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 USC § 933(a)(1) and (b) | Trafficking in firearms |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

/s/ Steven Blakely
*Complainant's signature*

Spcial Agent Steven Blakely, ATF
*Printed name and title*

Date:    10/20/2025   8:37 am

*Judge's signature*

City and state:    Durham, North Carolina

Hon Joe L. Webster,United States Magistrate Judge
*Printed name and title*



<u>**AFFIDAVIT**</u>

I, Steven D. Blakely, being first duly sworn, hereby depose and state that the following is true and correct upon my personal knowledge, investigation, and belief:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I have been a Special Agent with ATF since December of 2020.  I have successfully completed and graduated the Criminal Investigator Training Program (CITP) as well as the Special Agent Basic Training Program (SABT).   I was previously a police officer with the Charleston Police Department (South Carolina) and the Fairfax County Police Department (Virginia).  As an ATF Special Agent, I have participated in numerous investigations involving firearms trafficking, narcotics trafficking, organized criminal activity and firearms possession and use.

2.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      The facts as set forth in this affidavit come from my personal observation, information relayed to me by other investigators, and information obtained from other official reports of law enforcement.  Based on the facts in conjunction with my training and experience, I submit that there is probable

cause to believe that a violation of Title 18 USC § 933(a)(1) and (b) occurred within the Middle District of North Carolina.

## PROBABLE CAUSE

4.      This Affidavit is made in support of a Criminal Complaint seeking the issuance of an Arrest Warrant charging Erik MOORE (YOB: 1981, hereinafter "MOORE") with violation of Title 18 USC § 933(a)(1) and (b).

5.      Beginning in July of 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SAs) began an investigation into MOORE.  During the investigation, ATF SAs conducted several undercover purchases involving MOORE.  SAs originally utilized Facebook Messenger to communicate with MOORE and eventually began communicating with MOORE via telephone number (360) 410-0379 (TT1).  All the transactions were audio/video recorded.

### August 7, 2025 – Undercover Purchase

6.      On August 7, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SAs) conducted an undercover operation in Hillsborough, North Carolina, which is located in the Middle District of North Carolina.  The Undercover Agent (UC 1), who is a ATF Special Agent, acting in an undercover capacity and was engaged in the performance of their official duties through these events, purchased three firearms from MOORE.

7.     Beginning on July 24, 2025 and continuing through August 7, 2025, an ATF undercover agent (UC 1) communicated with MOORE via Facebook Messenger regarding UC 1 purchasing firearms from MOORE. During these communications via Facebook Messenger, UC 1 and MOORE agreed to meet on August 7, 2025, so UC 1 could purchase two (2) firearms for $1,150 from MOORE using ATF funds.

8.     On August 07, 2025, UC 1 arrived at the predetermined meet location of Vinny's Italian Grill and Pizzeria which is located at 133 N. Scotswood Boulevard, Hillsborough, North Carolina. Upon UC 1's arrival to the meeting location, UC 1 observed MOORE in the parking lot of the meeting location. MOORE was sitting in the driver seat of a gray Dodge Ram 2500 pickup truck (North Carolina License Plate: TR3528). UC 1 observed an additional occupant in the vehicle, who was later identified as MOORE's son, Man-1. UC 1 parked the undercover vehicle (UCV) near the vehicle MOORE was occupying. Subsequently, UC 1 and MOORE exited their vehicles and greeted each other. MOORE removed two firearms from his vehicle and UC 1 purchased the two firearms from MOORE in exchange for $1,150 in ATF funds. During the transaction, MOORE was in possession of an additional firearm which UC 1 offered to purchase. MOORE agreed to sell the firearm to UC 1. Therefore, UC 1 purchased the firearm from MOORE in exchange for $500 in ATF funds.

9.     The transaction then concluded, and UC 1 departed the area.

10.     The firearms purchased were identified as one ZRO Delta, Model Ready Series, multi-caliber AR-Style pistol, S/N ZAR11366, with two magazines, one Glock Model 43, 9mm caliber pistol, S/N ZZC507, with two magazines which contained a total of 12 rounds of assorted ammunition, and one Smith and Wesson, Model M&P 9 Shield Plus, 9mm caliber pistol, S/N JPA0852, with two magazines.

11.     The transaction was audio/video recorded.

12.     A nexus was conducted on the Glock Model 43, 9mm caliber pistol, S/N ZZC507 and the Smith and Wesson, Model M&P 9 Shield Plus, 9mm caliber pistol, S/N JPA0852 by Interstate nexus expert, SA Dickinson who determined both firearms were not manufactured in North Carolina and therefore traveled in or affected interstate commerce.

### *August 14, 2025 – Undercover Purchase*

13.     On August 14, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SAs) conducted an undercover operation in Hillsborough, North Carolina, which is located in the Middle District of North Carolina.  The Undercover Agents (UC 1 and UC 2), who are ATF Special Agents, acting in undercover capacities and were engaged in the performance of their official duties through these events, purchased four firearms from MOORE.

14.    Beginning on August 11, 2025 and continuing through August 14, 2025, UC 1 communicated with MOORE via TT1 regarding future purchases of firearms from MOORE.  During these communications via TT1, UC 1 and MOORE agreed to meet on August 14, 2025, so UC 1 could purchase four (4) firearms for $2,700 from MOORE using ATF funds.

15.    On August 14, 2025, UC 1 and UC 2 arrived at the predetermined meet location of Vinny's Italian Grill and Pizzeria which is located at 133 N. Scotswood Boulevard, Hillsborough, North Carolina.  Shortly after the UCs arrival, MOORE arrived at the meet location and parked near the UCV. Subsequently, UC 1, UC 2, and MOORE exited their vehicles and greeted each other.  MOORE obtained four firearms from his vehicle and provided the firearms to UC 1 and UC 2.  Subsequently, UC 1 and UC 2 purchased the four firearms from MOORE in exchange for $2,700 in ATF funds.

16.    During the transaction, UC 1 engaged MOORE in general conversation.  UC 1 informed MOORE that the UCs transport the firearms to New York because the UCs can make more money on the firearms in New York due to the stricter gun laws.  UC 1 explained the difference in prices for Glocks in New York.  UC 1 advised MOORE that the UCAs obliterate the serial numbers so the firearms will not be able to be traced back to anyone, including MOORE.  MOORE stated, "Now I know that, I will get that shit for you for

sure." During the conversation, MOORE stated, "I am a 7 time felon." UC 1 understood MOORE to be stating that MOORE is a convicted felon.

17.     The transaction then concluded, and the UCs departed the area.

18.     The firearms purchased were identified as one Glock, Model 30s, .45 Auto caliber pistol, S/N UFY666, with two magazines, one Smith & Wesson, Model M&P 40 Shield M2.0, 40 caliber pistol, S/N JPP5261, with two magazines, one FN, Model 509, 9mm caliber pistol, S/N GKS0351093, with two magazines, one Anderson Manufacturing, Model AM-15, Multi caliber AR-Style Rifle, S/N 15009505 with one magazine, and a total of 75 rounds of assorted ammunition.

19.     The transaction was audio/video recorded.

20.     A nexus was conducted on the firearms listed in paragraph 18 by Interstate nexus expert, SA Dickinson who determined the firearms were not manufactured in North Carolina and therefore traveled in or affected interstate commerce.

### *September 2, 2025 – Undercover Purchase*

21.     On September 2, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SAs) conducted an undercover operation in Vass, North Carolina, which is located in the Middle District of North Carolina. The Undercover Agent, who is an ATF Special Agent, acting in an undercover

capacity and was engaged in the performance of their official duties through these events, purchased five firearms from MOORE.

22.     Beginning on August 14, 2025 and continuing through September 2, 2025, UC 1 communicated with MOORE via TT1 regarding future purchases of firearms from MOORE.  During these communications via TT1, UC 1 and MOORE agreed to meet on September 2, 2025, so UC 1 could purchase five (5) firearms for $4,000 from MOORE using ATF funds.

23.     On August 14, 2025, UC 1 arrived at the predetermined meet location of the Piggly Wiggly located at 3373 US-1 Business, Vass, North Carolina.  Upon UC 1's arrival, UC 1 observed MOORE's gray Dodge Ram 2500 pickup truck (North Carolina License Plate: TR3528) parked in the parking lot at the meet location.  Subsequently, UC 1 parked the UCV near MOORE's vehicle. UC 1 and MOORE exited the vehicles and greeted each other.  It should be noted that MOORE was the sole occupant of his vehicle.  MOORE obtained five firearms from his vehicle and provided the firearms to UC 1.  Subsequently, UC 1 purchased five firearms from MOORE in exchange for $4,000 in ATF funds.

24.     During the transaction, MOORE and UC 1 engaged in general conversation.  UC 1 advised MOORE that UC 1's "people" are going to like the firearms.  Additionally, UC 1 informed MOORE that the firearms "go up north and we make hella bread".  It should be noted that UC 1 was stating to MOORE

that the firearms were not for UC 1 and that the firearms are trafficked up north to be sold for a profit. MOORE informed UC 1 that MOORE is currently working at a powerplant and is renting a place to live at while working at the powerplant. MOORE advised that MOORE would be working at the powerplant for several months. MOORE continued and advised that MOORE has 20 pistols at the apartment. UC 1 understood MOORE to be stating that MOORE has multiple firearms in the apartment that MOORE is currently staying at while he is working at the power plant.

25. The transaction then concluded, and UC 1 departed the area.

26. The firearms purchased were identified as one Riley Defense Inc, Model RAK 47, 7.62 x 39 caliber rifle, S/N B 30811 with two magazines, one Romarm/Cugir, Model WASR-10, 7.62 x 39 caliber rifle, S/N ROA 21 A1-87763, one Ruger, Model EC9s, 9mm caliber pistol, S/N 463-18047 with one magazine, one Glock, Model 43, 9mm caliber pistol, S/N AFVS285 with one drum style magazine, and one Intratec, Model Tec-DC9, 9mm caliber pistol, S/N D004908 with two magazines.

27. The transaction was audio/video recorded.

28. A nexus was conducted on the Riley Defense Inc, Model RAK 47, 7.62 x 39 caliber rifle, S/N B 30811 with two magazines, the Romarm/Cugir, Model WASR-10, 7.62 x 39 caliber rifle, S/N ROA 21 A1-87763, one Glock, Model 43, 9mm caliber pistol, S/N AFVS285, and the Intratec, Model Tec-DC9, 9mm

caliber pistol, S/N D004908 by Interstate nexus expert, SA Dickinson who determined the firearms were not manufactured in North Carolina and therefore traveled in or affected interstate commerce.

### October 1, 2025 – Undercover Purchase

29.     On October 1, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SAs) conducted an undercover operation in Rockingham, North Carolina, which is located in the Middle District of North Carolina.  The Undercover Agent, who is an ATF Special Agent, acting in an undercover capacity and was engaged in the performance of their official duties through these events, purchased 8 firearms from MOORE.

30.     Beginning on September 4, 2025 and continuing through October 1, 2025, UC 1 communicated with MOORE via TT1 regarding future purchases of firearms from MOORE.  During these communications via TT1, UC 1 and MOORE agreed to meet on October 1, 2025, so UC 1 could purchase five (5) firearms for $3,600 from MOORE using ATF funds.

31.     On October 1, 2025, UC 1 arrived at the predetermined meet location of MOORE's residence located at 100 Carolyns Mill Place, Rockingham, North Carolina.   Upon UC 1's arrival, UC 1 exited the undercover vehicle (hereinafter UCV) and approached the front door of 100 Carolyns Mill Place. While approaching the front door to the apartment building, UC 1 observed MOORE standing at the front door of the apartment building.

32.     UC 1 and MOORE greeted each other with handshakes and walked into the building.  UC 1 followed MOORE up the steps toward apartment 201. MOORE retrieved a package that was near the front door of apartment 201. MOORE opened the front door to apartment 201 and UC 1 followed MOORE into the apartment.

33.     Once inside the residence, MOORE obtained two gun boxes from an entertainment stand located in the living room and two gun boxes from a cabinet in the living room.  Additionally, MOORE obtained one firearm from near the aforementioned cabinet in the living room.  MOORE provided all four gun boxes and one firearm to UC 1.  UC 1 inspected the four gun boxes and saw that each gun box contained one firearm and accessories.  Additionally, UC 1 inspected the individual firearm that MOORE retrieved from near the cabinet in the living room.  UC 1 secured all five firearms.  It should be noted that these were the five firearms that UC 1 and MOORE previously discussed purchasing for $3,600 via text message.

34.     UC 1 and MOORE walked back toward the cabinet located in the living room.  MOORE obtained six 30 round magazines from the cabinet, which contained ammunition, and provided the magazines and ammunition to UC 1. UC 1 agreed to purchase the additional magazines and ammunition from MOORE for $100. While in the living room, UC 1 observed numerous additional firearm boxes in the cabinet.

35.     UC 1 and MOORE discussed UC 1 purchasing additional firearms that MOORE was in possession of.  MOORE and UC 1 walked back toward the entertainment stand located in the living room.  MOORE began opening up drawers of the entertainment stand, where UC 1 observed numerous firearm boxes in the aforementioned entertainment stand located in the living room. MOORE asked UC 1, "You looking for a personal gun or one to get rid of?" UC 1 responded, "Nah, throw aways.  They going up north, you know."  It should be noted that UC 1 was informing MOORE that the firearms were not for UC 1 and that the firearms would be transported up north to be sold.

36.     Ultimately, MOORE provided UC 1 three additional gun boxes.  UC 1 inspected the gun boxes, and each box contained one firearm.  MOORE agreed to sell the three additional firearms to UC 1 for $1,300.  Subsequently, UC 1 secured the three firearms.  It should be noted, that after UC 1 secured the three firearms, UC 1 observed additional gun boxes still in the entertainment stand.

37.     MOORE and UC 1 exited the residence and walked toward the UCV, which was parked in the guest parking lot of the residence.  While at the UCV, UC 1 secured the eight firearms in the trunk of the UCV and provided MOORE with $5,000 in ATF funds.

38.     The transaction then concluded, and UC 1 departed the area.

39.　The firearms purchased were identified as one Short Barrel AR-Style Rifle, 300 Blackout Caliber, no serial number, upper receiver is Hardened Arms, one Glock, Model 19 Gen 4, 9mm Caliber pistol, S/N YHH953 with two magazines, one GForce Arms, Model Exodus RPX9, 9mm Caliber pistol, S/N TK934-25A07212 with 2 magazines, one Ruger, Model P95DC, 9mm Caliber pistol, S/N 314-10962 with 2 magazines, Smith and Wesson, Model SW9VE, 9mm Caliber pistol, S/N PBR5875 with 2 magazines, one Ruger, Model LCP, .380 Caliber pistol, S/N 379094633 with 1 magazine, one Kahr Arms, ModelCM9, 9mm Caliber pistol, S/N IR2915 with 2 magazines, one Glock, Model 26 Gen 4, 9mm Caliber, S/N UYB453 with 2 magazines, Seven 30 round 5.56x45 magazines, and one hundred seventy five rounds of assorted 300 black out assorted ammunition.

40.　The transaction was audio/video recorded.

41.　A nexus was conducted on the following firearms: Glock, Model 19 Gen 4, 9mm Caliber pistol, S/N YHH953, GForce Arms, Model Exodus RPX9, 9mm Caliber pistol, S/N TK934-25A07212, Smith and Wesson, Model SW9VE, 9mm Caliber pistol, S/N PBR5875, Kahr Arms, ModelCM9, 9mm Caliber pistol, S/N IR2915, and the Glock, Model 26 Gen 4, 9mm Caliber, S/N UYB453 by Interstate nexus expert, SA Dickinson who determined the firearms were not manufactured in North Carolina and therefore traveled in or affected interstate commerce.

## CONCLUSION

42.     Based on the investigation and my review of information provided by other investigators who have participated in the investigation of MOORE, I respectfully submit that there is probable cause to issue an arrest warrant charging MOORE with violation of Title 18 USC § 933(a)(1) and (b) and respectfully request that an arrest warrant be issued.


Respectfully Submitted,


/S/ Steven Blakely
Steven D. Blakely, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives



On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this written affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: October 20, 2025  8:37 am

City and State: Durham, North Carolina


Hon. Joe L. Webster
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA